UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

Custom Hardware Engineering                )
& Consulting, Inc., et al.,                )
                                           )
           Plaintiffs,                     )
                                           )
     v.                                    )          Case No.: 4:10CV000653 ERW
                                           )
Jonathan D. Dowell, et al.,                )
                                           )
           Defendants.                     )


**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on Counterclaim-Defendant Custom Hardware

Engineering & Consulting, Inc.'s Motion to Dismiss and/or Motion for a More Definite

Statement and Motion to Strike Directed to William Pilling [doc. #72]; Counterclaim-Defendant

Custom Hardware Engineering & Consulting, Inc.'s Motion to Dismiss and/or Motion for a More

Definite Statement and Motion to Strike Directed to Marcus Smith [doc. #74]; Counterclaim-

Defendant Custom Hardware Engineering & Consulting, Inc.'s Motion to Dismiss and/or Motion

for a More Definite Statement and Motion to Strike Directed to Jonathan Dowell [doc. #76]; and

Third Party Defendants Custom Hardware Engineering & Consulting, Inc.'s and David York's

Motion to Dismiss and/or For a More Definite Statement and Motion to Strike Directed to Laura

Smith [doc. #112].

## I.      BACKGROUND

On April 20, 2010, Custom Hardware Engineering & Consulting, Inc. ("CHE") filed an

eleven-count Verified Complaint seeking relief against Jonathan Dowell ("Dowell"), Marcus

Smith ("Smith"), and TriPoint Development, Inc. ("TriPoint").  In the Complaint, CHE alleged

the following: (1) violation of the Federal Copyright Act, 17 U.S.C. §§ 101, *et. seq.*; (2) violation

of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) breach of contract, as against

Dowell and Smith; (4) breach of fiduciary duty and duty of loyalty, as against Dowell and Smith;

(5) tortious interference with contract, as against TriPoint; (6) violation of the Missouri Uniform

Trade Secrets Act, Mo. Rev. Stat. §§ 417.450 - 417.467; (7) unfair competition; (8) civil

conspiracy; (9) replevin; (10) conversion; and (11) unjust enrichment [doc. #1].  Among the

allegations in the lawsuit, CHE alleged Defendants engaged in a calculated scheme to defraud

and directly compete with CHE.

Dowell, Smith, and TriPoint agreed to a Consent Preliminary Injunction on April 26,

2010 [doc. #14], and then filed their Joint Answer and Defenses to CHE's Verified Complaint on

June 25, 2010 [doc. #30].  On September 3, 2010, CHE filed its First Amended Complaint for

Injunctive Relief and Damages adding William Pilling ("Pilling") as an additional Defendant and

asserting identical claims as those asserted against Dowell and Smith [doc. #50].  On October 1,

2010, Dowell, Smith, Pilling, Tri-Point, Laura Smith, and Linda Pilling all filed Counterclaims

against CHE and David York ("York"), as a third-party defendant.  On October 22 and December

2, 2010, CHE filed motions to dismiss the Counterclaims for lack of subject matter jurisdiction,

lack of supplemental jurisdiction, and for failure to state a claim.

**Jonathan Dowell's Counterclaim**

In his Counterclaim, Dowell lists six counts: (1) Unpaid Wages; (2) Breach of Contract; (3) Slander and Libel; (4) Wrongful Termination; (5) Tortious Interference; and (6) Abuse of Process. In this Court's Memorandum and Order dated March 21, 2011 [doc. #169], the Court granted Counterclaim Plaintiffs and Third-Party Plaintiffs Motion for Voluntary Dismissal of Certain Claims [doc. #167], wherein Dowell dismissed and withdrew Counts 5 and 6, and his claim for vacation pay contained in Count 1. The remaining Counts for Dowell are Counts 1 through 4.

**Marcus Smith's Counterclaim**

In his Counterclaim, Smith lists seven counts: (1) Unpaid Wages; (2) Breach of Contract; (3) Fraudulent Misrepresentation; (4) Wrongful Termination; (5) Slander and Libel; (6) Tortious Interference; and (7) Abuse of Process. In this Court's Memorandum and Order dated March 21, 2011 [doc. #169], the Court granted Counterclaim Plaintiffs and Third-Party Plaintiffs Motion for Voluntary Dismissal of Certain Claims [doc. #167], wherein Smith dismissed and withdrew Counts 6 and 7, and his claim for vacation pay contained in Count 1. The remaining Counts for Smith are Counts 1 through 5.

**William Pilling's Counterclaim**

In his Counterclaim, Pilling lists eight counts: (1) Unpaid Wages; (2) Breach of Contract; (3) Federal Copyright Infringement; (4) Fraudulent Misrepresentation; (5) Slander and Libel; (6) Wrongful Termination; (7) Tortious Interference; and (8) Abuse of Process. In this Court's Memorandum and Order dated March 21, 2011 [doc. #169], the Court granted Counterclaim Plaintiffs and Third-Party Plaintiffs Motion for Voluntary Dismissal of Certain Claims [doc.

#167], wherein Pilling dismissed and withdrew Counts 3, 7, and 8, and his claim for vacation pay contained in Count 1. The remaining Counts for Pilling are Counts 1, 2, 4, 5, and 6.

**Laura Smith's Counterclaim**

In her Counterclaim, Laura Smith lists 4 counts: (1) Unpaid Wages; (2) Slander and Libel; (3) Wrongful Termination; and (4) Tortious Interference. In this Court's Memorandum and Order dated March 21, 2011 [doc. #169], the Court granted Counterclaim Plaintiffs and Third-Party Plaintiffs Motion for Voluntary Dismissal of Certain Claims [doc. #167], wherein Laura Smith dismissed and withdrew Count 4, and her claim for vacation pay contained in Count 1. The remaining Counts for Laura Smith are Counts 1 through 3.

**TriPoint and Linda Pilling's Counterclaims**

TriPoint and Linda Pilling each filed Counterclaims asserting counts of Tortious Interference against CHE and York, in addition to a second count asserted by TriPoint for abuse of process. However, these Counterclaims were voluntarily dismissed in this Court's March 21 Order, which consequently made CHE and York's Motions to Dismiss these Counterclaims moot. The Court will now turn to CHE and York's Motions to Dismiss the remaining Counterclaims.

## II.     LACK OF SUBJECT MATTER JURISDICTION

The Court will first consider CHE and York's ("Counterclaim-Defendants") argument that this Court lacks subject matter jurisdiction over the Counterclaims contained in Counts 1, 2, 4, 5, and 6 of Pilling's Counterclaim and should therefore be dismissed.

### A.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *Hart v. Terminex Int'l*, 336 F.3d 541, 541-42 (7th Cir. 2003) (stating that it was "regrettable" that the case had to be dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity"). However, "[f]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Under Federal Rule of Civil Procedure 12(b)(1), a party is permitted to challenge a federal court's jurisdiction over the subject matter of the complaint. When the Court's subject matter jurisdiction is challenged, at issue is the Court's "very power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). The party invoking the jurisdiction of the federal court has the burden of establishing that the court has the requisite subject matter jurisdiction to grant the requested relief. *See Kokkonen*, 511 U.S. at 377.

"Dismissal for lack of subject matter jurisdiction will not be granted lightly. *Bowe v. Northwest Airlines, Inc.*, 974 F.2d 101, 103 (8th Cir.1992), *cert. denied*, 507 U.S. 992, 113 S.Ct. 1602 (1993). For an action to be dismissed under Rule 12(b)(1), the complaint must either be successfully challenged on the factual truthfulness of its assertions, or be successfully challenged on its face. *See Osborn*, 918 F.2d at 729. The identification of whether a challenge is facial or

factual is a necessary step, and this identification establishes how a court should proceed when resolving a motion to dismiss under Rule 12(b)(1).  When subject matter jurisdiction is challenged based on the factual truthfulness of the assertions, a court is permitted to consider "matters outside the pleadings," such as testimony and affidavits.  *Id.* at 729 n.2 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  When a court's subject matter jurisdiction is challenged in a facial attack, however, the Court "restricts itself to the face of the pleadings."  *Id.* at 729.  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction."  *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In this case, Counterclaim-Defendants' subject matter jurisdiction challenge is based strictly on the face of Pilling's Counterclaim, therefore Pilling's factual allegations concerning jurisdiction are presumed to be true.  The Court will accordingly restrict itself to considering the pleadings on their face.  Dismissal will therefore be proper if the facial attack shows there is no basis for jurisdiction.  *Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).

B.     DISCUSSION

Counterclaim-Defendants' lack of subject matter jurisdiction argument is based on 28 U.S.C. §§ 1331 and 1332.  A federal district court has subject matter jurisdiction based on diversity when the requirements set forth in 28 U.S.C. § 1332 have been met.  Specifically, the amount in controversy must exceed $75,000.00, and the parties must be of diverse citizenship.  *See* 28 U.S.C. § 1332(a)(1).  The first issue the Court must address is whether this case could have

originally been filed in this, or another, federal court. *See Caterpillar, Inc. v. Williams*, 482 U.S.386, 392 (1987). Pilling asserts that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). However, Counterclaim-Defendants contest this assertion and argue that the Court lacks subject matter jurisdiction over Pilling's remaining Counterclaims contained in Counts 1, 2, 4, 5, and 6, because Pilling has failed to satisfy the amount in controversy requirement under 28 U.S.C. § 1332.

While the Court finds that it is clear from Pilling's pleadings that the diversity of citizenship requirement has been met, it is not as immediately apparent that the amount in controversy requirement has been met in this case. It appears that Pilling failed to address this issue by not specifying the amount in controversy. Pilling filed his 8 count Counterclaim on October 1, 2010 and described the basis for each of the claims, but did not state the amount of monetary damages sought. However, the Court believes that Counterclaim-Defendants' receipt of the Counterclaim should have put them on notice that the amount in controversy met or exceeded the jurisdictional amount. Notwithstanding the shortcomings of the Counterclaim in regard to this issue, Pilling's Counterclaim facially established that it is more likely than not that the claimed damages would exceed $75,000.00 if he were successful. Pilling has prayed for damages sustained by Pilling for 20% of the net profits received from E-PET licenses sold by CHE, unpaid royalties, as well as unpaid wages, punitive damages and wrongfully withheld attorney's fees. The Court believes that Counterclaim-Defendants should be able to ascertain from a fair reading of the Counterclaim, that the minimum jurisdictional amount exists, even though the amount of damages was not specified. Additionally, Pilling addresses this issue in his Response to CHE's

Motion to Dismiss,[1] in which he now specifically states that the amount in controversy does exceed $75,000, thereby complying with section 1332(a).

Counterclaim-Defendants argue that jurisdiction is not a speculative matter. While the Court agrees that it would be speculative to specify the exact dollar amount at issue in the case, it is not speculative to conclude that the amount in controversy in this case exceeds $75,000, considering the conduct alleged. Further, the Court does not find sufficient evidence to determine to a legal certainty that Pilling's claims are for less than the jurisdictional amount. *See Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002) (A "complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is for less than the jurisdictional amount."). While Pilling's Counterclaim does not quantify the amount of damages sought, it is clear that based upon alleged damages to Pilling's career and reputation it is more likely than not that damages will exceed $75,000.00 in the event of recovery. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007) (District Court correctly concluded it possessed subject matter jurisdiction after finding "it was more likely than not" that the potential cost of the claim would exceed $75,000); *see also Villareal v. Smith*, 201 Fed. Appx. 192, 195 (5th Cir. 2006) (Amount in controversy requirement was not met when it did not appear more likely than not from the face of the complaint that the claims would exceed $75,000). Further, Pilling may also rely on punitive damages to establish the requisite amount in controversy. *See Reinke v. Bank of America, N.A.*,

---

[1] In Counterclaim-Defendant David York's Answer to Counterclaim-Plaintiff William Pilling's Counterclaims [doc. #120], York incorporated, by reference CHE's Answer, as well as CHE's Motion to Dismiss Pilling's Counterclaim. The same is true for York's Answers to the Counterclaims of Dowell, Smith, and Laura Smith.

2005 WL 3454428, at *2-3 (E.D. Mo. 2005); see also *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 563 (D. N.J. 2009) (citing *Golden ex rel. Golden v. Golden,* 382 F.3d 348, 355 (3d Cir. 2004) ("The satisfaction of the amount in controversy requirement is even more likely when taking into account punitive damages sought by plaintiff.").  Accordingly, Pilling has alleged every element necessary to support subject matter jurisdiction.  *See Titus*, 4 F.3d at 593.

The Court, therefore finds that it has subject matter jurisdiction over Pilling's Counterclaims, and denies CHE and York's Motion to Dismiss Counts 1, 2, 4, 5, and 6 of the Counterclaim.  S*ee Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *see also Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010) (stating "the district court did not overstep by relying on its judicial experience and common sense to determine whether [Plaintiff's] claims likely exceed $75,000 ").

## III.    LACK OF SUPPLEMENTAL JURISDICTION

Counterclaim-Defendants argue that Dowell's state law Counterclaims contained in Counts 1 through 4, Smith's Counterclaims contained in Counts 1 through 5, and Laura Smith's Counterclaims contained in Counts 1 through 3 should all be dismissed on the grounds that this Court lacks supplemental jurisdiction under 28 U.S.C. section § 1367(a) over these particular counterclaims [doc. #76, pg. 2; doc . #74, pg. 2; doc. #112, pg. 2].[2]  The issue is whether Counterclaim-Plaintiffs' claims are so related to the claims of CHE (the claims over which this

---

[2]  These are the only remaining claims for these individuals following the Court's March 21, 2011 Order granting voluntary dismissal of certain counterclaims.

Court has original jurisdiction) as to form part of the same case or controversy. The Court notes that the arguments made by Counterclaim-Defendants in their motions to dismiss are substantially similar from motion to motion, due to the similarity of the allegations contained in each of the respective Counterclaims. Therefore, the Court's analysis applies to all of the remaining claims of Dowell, Smith, and Laura Smith.

## A.    LEGAL STANDARD

If state law claims form part of the same case or controversy as claims arising as a federal question, a district court possesses supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a). The party invoking jurisdiction bears the burden of proof that the prerequisites to jurisdiction are satisfied. *See Green v. Ameritrade, Inc.*, 279 F.3d 590, 595 (8th Cir. 2002); *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993). When both federal and state claims appear on the face of a complaint, a federal court has jurisdiction over the entire action "whenever the federal-law claims and state-law claims in the case 'derive from a *common nucleus of operative fact*' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (emphasis added, alteration in original). Additionally, a federal court may, in its discretion, decline to exercise supplemental jurisdiction over a state law claim if: the claim involves complex issues of state law; state law claims predominate over federal claims; all federal claims have been dismissed; or, under "exceptional circumstances," a compelling reason exists to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(4).

Counterclaim-Defendants argue that this Court lacks supplemental jurisdiction over the

Counterclaims because Dowell, Smith, and Laura Smith's claims are not part of the same case or controversy as the claims in CHE's First Amended Complaint for Injunctive Relief and Damages. Upon reviewing the allegations contained in CHE's Complaint and the allegations contained in Dowell, Smith, and Laura Smith's Counterclaims, the Court finds that the claims are part of the same "case or controversy" due to the claims deriving from a common nucleus of operative facts. The Court believes that the conduct alleged by Dowell, Smith, and Laura Smith is substantially related to several of CHE's respective claims and constitutes more than a "simple intertwining of facts." *See Williams v. Kelso*, 201 F.3d 1060, 1066 (8th Cir. 2000). Furthermore, while Counterclaim-Defendants argue the opposite, the Court considers the reasoning behind the application of supplemental jurisdiction, as espoused by the court in *Netbank v. Williams*, to be applicable to the present case. Dowell, Smith, and Laura Smith's claims appear to not "exist 'but for' the facts of the main cause of action which [this Court] has original jurisdiction." Doc. # 76, pg. 4; *See Netbank v. Williams*, 2007 WL 2434051, at *2 (E.D. Mo. Aug. 22, 2007).

Likewise, the Court does not agree with Counterclaim-Defendants' contention that it is improper to try all these claims in one judicial proceeding. The outcome of several of the claims asserted by each party will ultimately be based on the determination of the truth of common factual issues. For example, CHE alleges in its First Amended Complaint, that Dowell, Smith, Pilling and TriPoint were engaged in a calculated scheme to defraud and directly compete with CHE [doc. #50, pg. 14]. CHE states that Dowell, Smith and Pilling "knowingly misappropriated and misused CHE's confidential information and trade secrets for their own personal benefit and for the benefit of TriPoint; all with the intent to defraud, gain an economic advantage over, and compete directly with CHE" [doc. #50, pg. 15]. CHE also alleges that "Defendant Smith solicited

11

and induced Defendants Dowell and Pilling to terminate their employment with CHE and form [TriPoint]" [doc. #50, pg. 26]. CHE's allegations directly contradict Dowell, Smith, Laura Smith and Pilling's version of events regarding their terminations from CHE, thereby putting into question the veracity of several of the alleged facts that form the basis of each party's claims. The Court does not believe that proper adjudication of any of the parties' claims would be best served by a separate proceeding and independent determination of Counterclaim-Plaintiffs' claims on the merits.

Furthermore, having already determined that this Court has subject matter jurisdiction over Pilling's Counterclaims, the Court finds that this fact provides additional justification to exercise supplemental jurisdiction.[3] Pilling's Counterclaim contains several of the same claims against Counterclaim-Defendants as Dowell, Smith, and Laura Smith's Counterclaims. Pilling's Counterclaim contains claims of unpaid wages, breach of contract, slander and libel, and wrongful termination. With the exception of the lack of a breach of contract claim in Laura Smith's Counterclaim, the Counterclaims for Jonathan Dowell, Marcus Smith, and Laura Smith all contain these same claims and are predicated upon nearly identical factual allegations.[4] Consistency and judicial efficiency necessitates hearing all of these claims together. The Court, accordingly, finds

---

[3] The Court finds that, alternatively, had it not already addressed the issue of Pilling's Counterclaims in the context of subject matter jurisdiction, the Court could exercise supplemental jurisdiction over Pilling's Counterclaims for the same reasons stated in this section allowing the Court to exercise supplemental jurisdiction over the other Counterclaim-Plaintiffs' claims. *See* 10 James Wm. Moore, et al., Moore's Federal Practice § 13.110[3], 13-102 (3d ed. 2004) ("unless it falls within the supplemental jurisdiction of the court, a counterclaim . . . in an action based on diversity must satisfy the jurisdictional amount").

[4] In addition, Smith and Pilling's Counterclaims each allege fraudulent misrepresentation.

that the claims are such that they would be expected to be tried all in one judicial proceeding.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Netbank*, 2007 WL 2434051, at *2. Further, the Court finds no exceptional circumstances that would provide a compelling reason to decline supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(4).

Counterclaim-Defendants additionally argue that the ruling in *Lawrence* supports their assertions that this Court should dismiss the Counterclaims for lack of supplemental jurisdiction. *See Lawrence & Associates, Inc. v. Amdocs Champaign, Inc.*, 2007 WL 3900732 (E.D. Mo. Jan. 31, 2007).  While apparently very similar on its face, the Court finds *Lawrence* fails to address all of the issues and factual considerations that need to be resolved in this case, and considers the factual and procedural parallels more coincidental than persuasive.  The Court, therefore agrees with Counterclaim-Plaintiffs' argument that this Court has supplemental jurisdiction over their claims, due to their claims being so related to CHE's claims as to form part of the same case or controversy.  The Court, consequently, denies Counterclaim-Defendants' Motions to Dismiss for lack of supplemental jurisdiction.

## IV.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Counterclaim-Defendants additionally argue that the claims of wrongful termination contained in Count 6 of Pilling's Counterclaim, Count 4 of Dowell and Smith's Counterclaims, and Count 3 of Laura Smith Counterclaims, should all be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

### A.     LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss for

failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content allows the court to draw reasonable inferences that the defendant is liable for the alleged misconduct." *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (internal quotation omitted). In reviewing such a motion, the court must take all facts alleged in the complaint to be true and must construe pleadings in the light most favorable to the plaintiff. *See Chambers v. St. Louis County*, 247 Fed. Appx. 846, 848 (8th Cir. 2007) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." While a plaintiff does not have to "'set out *in detail* the facts upon which he bases his claim,' [Federal Rule of Civil Procedure] 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 n.3 (2007) (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)) (internal citation omitted). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). The factual allegations contained in the pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court does not accept as true any allegation that is a legal conclusion. *Ashcroft*, 129 S.Ct. 1937, 1949-50 (2009). The

plaintiff must demonstrate his or her entitlement to relief, and "'a formulaic recitation of the elements of the cause of action will not do.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Therefore, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1950. When the court "can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed. *Cole*, 599 F.3d 856 at 861 (quoting *Ashcroft*, 129 S. Ct. at 1950).

## B.  WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

The general rule in Missouri is that at-will employees may be terminated for any reason or no reason. *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo. banc 1988). "As a matter of law, the discharged at-will employee has no cause of action for wrongful discharge." *Id.* Furthermore, "a wrongful discharge action must be based on a constitutional provision, a statute, a regulation based on a statute or a rule promulgated by a governmental body. Absent such explicit authority, the wrongful discharge action fails as a matter of law. Moreover, not every statute or regulation gives rise to an at-will wrongful termination action." *Akers v. RSC Equipment Rental, Inc.,* 2010 WL 5479678, at *4 (E.D. Mo. 2010) (citing *Margiotta v. Christian Hosp., Ne. Nw.*, 315 S.W.3d 342, 346 (Mo. 2010)). However, "the at-will-employment doctrine is not static. It may be modified directly by or through public policy reflected in the constitution, a statute, a regulation promulgated pursuant to statute, or a rule created by a governmental body." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010) (citing *Johnson*, 745 S.W.2d

at 663). Public policy "is the principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public good." *Fleshner*, 304 S.W.3d at 91 (quoting *Boyle v. Vista Eyewear, Inc.*, 700 S.W. 2d 859, 871 (Mo. App. 1985). The Missouri Supreme Court has adopted the following public-policy exception to the at-will employment doctrine:

> An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities

*Fleshner*, 304 S.W.3d at 92. "If an employee is terminated by an employer for either reason, then the employee has a tort cause of action against the employer for wrongful discharge pursuant to the public-policy exception." *Wellman v. Whole Foods Market Group, Inc*., 2011 WL 768405, at *2 (E.D. Mo. Feb. 28, 2011) (citing *Fleshner*, 304 S.W.3d at 92). "To find otherwise would allow employers to discharge employees, without consequence, for doing that which is beneficial to society." *Fleshner*, 304 S.W.3d at 92. While the public policy exception formerly applied only to at-will employees, in *Keveney*, the Missouri Supreme Court considered the issue of whether a contract employee, like an at-will employee, can pursue a claim for wrongful discharge in violation of public policy. *See Keveney v. Missouri Military Academy*, 304 S.W. 3d 98, 102-103 (Mo. 2010). The Missouri Supreme Court found that "it is inconsistent to allow an at-will employee to pursue an action for wrongful discharge while denying a contract employee the same right," and therefore determined that the public policy exception equally applies to contract employees pursuing a wrongful termination claim. *Id.* at 103.

## C. DISCUSSION

Counterclaim-Plaintiffs allege that their terminations from CHE were unlawful and violated public policy. The first public policy exception expressed in *Fleshner* involves "refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body." *Fleshner*, 304 S.W.3d at 92. To survive a motion to dismiss, the Counterclaim-Plaintiffs had to (1) plead that they refused to perform an illegal act or act in a manner contrary to public policy; (2) that they were discharged; and (3) that there is a causal connection between their discharge and their refusal to engage in the actions at issue. *See Keveney*, 304 S.W. at 103.

Counterclaim-Defendants argue that Counterclaim-Plaintiffs fail to state a claim because they "failed to plead sufficient facts that identify a particular constitutional provision, statute or regulation constituting the alleged 'illegal' acts" which Counterclaim-Plaintiffs claim their terminations were based upon. In *Fleshner*, the Missouri Supreme Court stated that "a plaintiff need not rely on an employer's *direct* violation of a statute or regulation. Instead, the public policy must be *reflected by* a constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body." *Fleshner*, 304 S.W. 3d at 96 (citing *Kirk v. Mercy Hospital Tri-County*, 851 S.W.2d 617, 621 (Mo. App. 1993) (emphasis in original)). While Counterclaim-Plaintiffs did not originally cite to a *particular* provision, there are several paragraphs in the Counterclaims that relate to the claims of wrongful termination for refusing to perform illegal acts, in violation of Federal Copyright Law.[5] Counterclaim-Plaintiffs state that the

_____

[5] Counterclaim-Plaintiffs now set forth provisions of Federal Copyright Law, U.S.C.A. Section 501(a) and (b), in their Responses in Opposition.

requested illegal acts "included breaking into VSM units, and hacking into a competitor's work and using copyrighted materials from other companies in violation of Federal Copyright law" [doc. #89, pg. 8-11]. Further, Counterclaim-Plaintiffs go into detail about each of these acts, state their belief for how Counterclaim-Defendants infringed upon a competitor's copyrights, and allege that they went to their superiors regarding their concerns. Taking all the alleged facts to be true, as this Court must do, and construing the pleadings in the light most favorable to Counterclaim-Plaintiffs, the Court finds that engaging in this type of alleged conduct would be a violation of a well-established and clear mandate of public policy as expressed by Federal Copyright law. Furthermore, terminating employees for refusing to engage in this type of alleged criminal behavior "clearly violates public policy and falls under the public policy exception for wrongful discharge of employees," as alleged by Counterclaim-Plaintiffs. Had Counterclaim-Plaintiffs not subsequently set forth a particular provision of Federal Copyright Law, the Court finds that the allegations also demonstrate a violation of public policy as *reflected by* Federal Copyright Law, thereby satisfying the requirement that Counterclaim-Plaintiffs refused to perform an illegal act or act in a manner contrary to public policy. *See Fleshner*, 304 S.W. 3d at 96; *Keveney*, 304 S.W. 3d at 104.

The second element requires pleading that Counterclaim-Plaintiffs were discharged, which is sufficiently alleged in the Counterclaims. In regards to the third element, involving whether there is a causal connection between their discharge and their refusal to engage in the actions at issue, each Counterclaim-Plaintiff states that they never acted in a way to warrant termination. Counterclaim-Plaintiffs state that their refusal to perform illegal acts was a contributing reason for their terminations. They further state that, rather than being allowed to

resign, they were terminated for their refusing to engage in the alleged illegal acts. "[C]ases involving . . . the public policy exception turn on whether an illegal factor played a role in the decision to discharge the employee." *Fleshner*, 304 S.W.3d at 94. The evidence "directly relates to the employer's intent or motivation." *Id.* "[I]f an employee reports violations of law or refuses to violate the law or public policy . . . it is a "contributing factor" to the discharge, and the discharge is reprehensible regardless of any other reasons of the employer." *Id.* at 94-95. In this case, Counterclaim-Plaintiffs allege that they went to their superiors with their concerns after allegedly being requested to perform illegal acts. They further state that this was a contributing factor for their terminations. The Court finds that Counterclaim-Plaintiffs have sufficiently plead the third element. Therefore, Counterclaim-Plaintiffs have stated a claim for wrongful discharge for refusing to perform an illegal act, as expressed by the first public policy exception.

Counterclaim-Plaintiffs additionally state that they not only "acted in the interest of public policy by . . . refusing to engage in illegal activity but also by reporting York's illegal activities to others in CHE." Public policy covers communications made to an employee's superiors. *See Fleshner*, 304 S.W.3d at 97, n.13. This second theory of wrongful discharge is commonly referred to as "whistleblowing." *Margiotta*, 315 S.W.3d at 347. "The pertinent inquiry here is whether the authority clearly prohibits the conduct at issue in the action." *Id.* Based upon the allegations and foregoing discussion, the Court finds that Counterclaim-Plaintiffs have satisfied the second public-policy exception to the at-will employment doctrine**,** concerning the reporting of wrongdoing or violations of law to superiors. The alleged conduct that Counterclaim-Plaintiffs reported to their superiors is egregious enough to be considered "serious misconduct that constitutes a violation of the law and of . . . well established and clearly mandated

public policy." *Id.*

"The issue before the Court is the sufficiency of the [pleadings], not whether [Counterclaim-Plaintiffs] will ultimately be able to prove all of the necessary elements." *Netbank*, 2007 WL 2434051, at *4. The Court finds that the pleadings do contain a short and plain statement of wrongful termination. Further, the Court believes that the allegations contain "sufficient factual information to provide the 'grounds' on which the claim rests, . . . raise a right to relief above the speculative level," and put Counterclaim-Defendants on notice of the claims against them. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008); *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"). The Court, therefore, finds that Counterclaim-Plaintiffs have sufficiently stated their claims to withstand a Rule 12(b)(6) challenge.

## V.       MOTION FOR A MORE DEFINITE STATEMENT

As an alternative to the Court granting the motions to dismiss for failure to state a claim, Counterclaim-Defendants seek a more definite statement regarding the nature of the wrongful termination claims, particularly the basis upon which the claims are predicated.

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. A motion under Rule 12(e) is "designed to strike at unintelligibility in a pleading rather than want of detail." *Patterson v. ABS Consulting, Inc.*, 2009 WL 248683, *2 (E.D. Mo. Feb. 2, 2009) (citing *Harvey v. Encompass Med. Group*, 2005 WL 3557419, at *2 (W.D. Mo. Dec. 28, 2005)).

For the foregoing reasons described by the Court in denying Counterclaim-Defendants' motions to dismiss for failure to state a claim, the Court finds that Counterclaim-Plaintiffs' Counterclaims are in compliance with the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires a plaintiff to give a short and plain statement "plausibly suggesting . . . that the pleader is entitled to relief."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).  As such, the Court will deny the motions for a more definite statement.

## VI.     MOTION TO STRIKE ATTORNEYS' FEES

Counterclaim-Defendants additionally asks this Court to strike Pilling's requests for attorneys' fees in Counts 1 through 6, Dowell's requests for attorneys' fees in Counts 1 through 4, Smith's requests for attorneys' fees in Counts 1 through 4, and Laura Smith's requests for attorneys' fees in Counts 1 through 3, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, on the grounds that these requested attorney fees are not based on statute or a contractual provision and are therefore unavailable under Missouri Law.  At this time, the Court declines to award attorneys' fees to either party.

Accordingly,

**IT IS HEREBY ORDERED** that Counterclaim-Defendant Custom Hardware Engineering & Consulting, Inc.'s Motion to Dismiss and/or Motion for a More Definite Statement and Motion to Strike Directed to William Pilling [doc. #72]; Counterclaim-Defendant Custom Hardware Engineering & Consulting, Inc.'s Motion to Dismiss and/or Motion for a More Definite Statement and Motion to Strike Directed to Marcus Smith [doc. #74]; Counterclaim-Defendant Custom Hardware Engineering & Consulting, Inc.'s Motion to Dismiss and/or Motion for a More Definite Statement and Motion to Strike Directed to Jonathan Dowell [doc. #76]; and Third Party

21

Defendants Custom Hardware Engineering & Consulting, Inc.'s and David York's Motion to

Dismiss and/or For a More Definite Statement and Motion to Strike Directed to Laura Smith [doc.

#112] are **DENIED**.

   **IT IS HEREBY FURTHER ORDERED** that no award of attorneys' fees will be

granted to either party at this time.

   Dated this <u>5th</u> Day of <u>May</u>, 2011.


              _____
              E. RICHARD WEBBER
              SENIOR UNITED STATES DISTRICT JUDGE