UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CUSTOM HARDWARE ENGINEERING  ) | |
| & CONSULTING, INC.,   ) | |
| ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant,   ) | |
| ) | |
| vs.   ) | Case No. 4:10CV000653 ERW |
| ) | |
| JONATHAN D. DOWELL, *et al*.,   ) | |
| ) | |
| ) | |
| Defendants/Counterclaim-Plaintiffs.   ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Custom Hardware Engineering & Consulting, Inc.'s ("CHE") Motion in Limine to Exclude Testimony and Expert Report of William Pilling ("CHE's *Daubert* Motion") [ECF NO. 361]; CHE's Motion to Exclude Testimony or Evidence Related to Defendants/Counterclaim Plaintiffs' Counterclaims [ECF No. 365], Defendants' First Motion in Limine [ECF No. 371], and Defendants' Second Motion in Limine [ECF No. 373].

CHE filed its Second Amended Complaint ("SAC") for Injunctive Relief and Damages against Defendants Jonathan D. Dowell, Marcus K. Smith, Laura Smith, William Pilling, and TriPoint Development, Inc. ("TriPoint"), alleging the following causes of action: 1) Copyright Infringement (against all Defendants); 2) Violation of Federal Fraud and Abuse Act (against all Defendants); 3) Breach of Contract (against Dowell, Marcus Smith, and Laura Smith); 4) Breach of Contract (against Pilling); 5) Breach of Fiduciary Duty and Duty of Loyalty (against Dowell, Marcus Smith, Laura Smith and Pilling); 6) Tortious Interference with Contract (against TriPoint); 7) Misappropriation of Trade Secrets (against all Defendants); 8) Unfair Competition (against all Defendants); 9) Civil Conspiracy (against all Defendants); 10) Replevin (against all

Defendants); 11) Conversion (against all Defendants); and 12) Unjust Enrichment (against all Defendants). On April 22, 2010, CHE filed a Motion for Temporary Restraining Order, alleging that the individual defendants were violating terms of their Employment Agreements with CHE, and asking the Court, among other things, to order Defendants to comply with their respective agreements, and to restrain and prevent Defendants and others from engaging in certain acts, which included engaging in a competing business, and copying, distributing or otherwise using CHE intellectual property [ECF No. 4]. On April 26, 2010, the Court signed a Consent Preliminary Injunction, which granted the relief sought by CHE [ECF Nos. 12, 13, 14].

Defendants filed several counterclaims in this matter, naming CHE and David York as Counterclaim-Defendants [ECF Nos. 58, 59, 60, 61, 167, 169]. Laura Smith and Third Party Plaintiff Linda Pilling filed Third Party Complaints against CHE and York [ECF No. 62, 63, 167, 169]. With the exception of one portion of a counterclaim brought by Defendant Marcus Smith, the claims filed on behalf of Defendants and third parties were either voluntarily dismissed and withdrawn, or dismissed by Court Order upon entry of summary judgment for CHE [ECF Nos. 137, 169, 354].

On January 31, 2013, the Court conducted a pretrial conference to hear arguments of the parties' pretrial motions, During argument on the Motions, CHE informed the Court of its decision to proceed to trial only on its breach-of-contract claims. CHE orally withdrew its Motion in Limine to Exclude Testimony and Expert Report of William Pilling ("CHE's *Daubert* Motion") [ECF No. 361], and Defendants stated that, in light of CHE's withdrawal of all but its two breach-of-contract claims, Defendants would not present Mr. Pilling's testimony or expert report. Accordingly, CHE's *Daubert* Motion would be denied as moot. However, in the interests of judicial economy and efficiency, and to provide the parties firm guidance as to the

Court's position regarding Mr. Pilling's testimony and report, the Court elects to issue a formal ruling on all the pending pretrial motions, including CHE's *Daubert* motion.[1]

At the conclusion of the pretrial conference, the Court granted the parties leave to file supplemental briefs addressing Defendants' Second Motion in Limine [ECF No. 373], which seeks to exclude evidence of damages,  The parties' counsel participated in a telephone conference with the Court on February 5, 2013, and, among other things, presented additional argument regarding Defendants' Second Motion in Limine.  After review of the parties' motions, supporting memoranda, and supplemental briefs, the Court rules as follows.

**I.     CHE'S *DAUBERT* MOTION [ECF NO. 361]**

On December 2, 2011, Defendant's Rule 26(A)(2) Disclosure identified William "Vern" Pilling as a non-retained expert, and indicated that the subject matter of his testimony would include computer software programming, hardware maintenance software, data security, computer software reverse engineering, computer hardware reverse engineering, computer software architecture and engineering, and data storage [ECF No. 217, 217-1].  In the Disclosure's Summary of Facts and Opinions, Mr. Pilling stated that he was presented with the report of CHE's computer forensic expert, Mr. Scott Greene, and that he had investigated its claims.  Mr. Pilling opined that Mr. Greene's finding in paragraph 7 of the report, concerning the usage of a "Task List.ersx" file  was not correct, and that installing Eraser software on a computer "has absolutely no potential to delete any data."  Mr. Pilling further opined that because the conclusions  numbered two (s) through five (5) expressed in Mr. Greene's report

---

[1] Additionally, the Court recognizes that CHE asserts in its *Daubert* motion that it reserves the right at trial to voir dire Defendants' non-retained experts Jonathan Dowell, Sr., and Linda Pilling, stating that those witnesses have not been previously deposed in the interest of litigation economy, and that it believes they may not satisfy Rule 702 of the Federal Rules of Evidence, or the requirements of *Daubert*, 509 U.S. 579 (1993).

were based on the mistaken finding in paragraph 7, those conclusions were false, and should be disregarded.  In their Witness List, filed on January 22, 2013, Defendants indicate that they will call Mr. Pilling as a witness at trial, or offer evidence of his testimony; and in their Exhibit List, they indicate that they will offer Mr. Pilling's December 2, 1011 affidavit, as Exhibit D-159 [ECF No. 351 at 8].

In its *Daubert* Motion, CHE moves the Court for an Order precluding Mr. Pilling's testimony and expert report during trial on the grounds that: 1) Mr. Pilling is not qualified to testify as an expert witness; 2) his testimony is not reliable; and 3) his testimony would not assist the trier of facts.  CHE states that Defendants seek to introduce testimony by Mr. Pilling as a forensic computer expert to discuss Mr. Pilling's "own misconduct of using Eraser 6 to destroy discoverable evidence."  CHE asserts that Mr. Pilling "admittedly" does not have the requisite education, experience, training or qualifications to qualify as an expert pursuant to Fed. Rules of Evidence 702, and that his expert conclusions and opinions are not based on reliable methodology or information.

Federal Rule of Evidence 702 sets forth the standards for determining if expert opinion testimony is admissible:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

4

>       (d) the expert has reliably applied the principles and methods to the
>       facts of the case.

Thus, to be admissible, evidence must be useful to the fact finder in deciding the ultimate issue of fact, the witness must be qualified to assist the fact finder, and the evidence must be reliable or trustworthy in an evidentiary sense. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)).  In determining whether expert testimony should be presented to a jury, Courts consider several factors, including: 1) whether the theory or technique can be, and has been, tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the theory or technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593-94.  Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible expert evidence. *Id.* at 596.  However, an expert's opinion should be excluded when it is "so fundamentally unreliable that it can offer no assistance to the jury." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004).

In support of its Motion, CHE claims that Mr. Pilling has never prepared a computer forensic evaluation, and that he has no experience in computer forensic data recovery.  CHE contends that: 1) Mr. Pilling testified that all of his analysis relied on information set forth on Eraser's public domain website; 2) he admitted his conclusions were based solely on his personal use of the Eraser computer software program; and 3) he testified his entire opinion and report were predicated on rudimentary and common computer knowledge that any lay person could easily discover by turning on a computer and running the Eraser 6 program.  CHE asserts

5

that, when specifically questioned whether his testimony would assist the trier of fact, Mr. Pilling consistently replied in the negative.

Defendants have not shown that Mr. Pilling possesses the technical or specialized knowledge that will assist a trier of fact to understand evidence or determine a fact in issue, that his testimony is based on sufficient data, that his testimony is the product of reliable principles and methods, or that he has reliably applied any principle or methods to the facts of this case. Moreover, in light of the fact that Mr. Pilling's expert testimony would be offered to rebut allegations of misconduct committed by him during the course of the litigation, the Court finds that William "Vern" Pilling is not reliable, and will not provide relevant opinions on his own use of the Eraser 6 program on his computer prior to surrendering it to the computer forensic expert chosen by the parties. The Court further finds that any testimony given by Mr. Pilling regarding the effect of his use of the Eraser 6 program on his computer would not assist the trier of fact. The Court will grant CHE's *Daubert* Motion.  Defendants shall neither argue nor present any evidence in opening statement or at any other time throughout the proceedings that relates to the testimony and expert report of William Pilling [ECF No. 271].

## II.     CHE'S MOTION IN LIMINE [ECF NO. 365]

In its Motion in Limine, CHE states that it anticipates that Defendants will attempt to introduce evidence and testimony purportedly relating to certain Counterclaims filed by Defendants, but previously dismissed, either voluntarily or by Court Order [ECF Nos. 169, 355, 356, 357, 358]. CHE moves the Court to preclude all parties, witnesses, and their attorneys from offering any testimony or evidence related to any of the dismissed Counterclaims,[2] or mentioning

---

[2]excepting that evidence concerning the remaining breach-of-contract claim contained in Count II of Defendant Marcus Smith's Counterclaim, which will be litigated during trial.

such Counterclaims or evidence in voir dire and opening statements, including, but not limited to evidence of:  alleged bonuses owed to Defendants Dowell and Laura Smith; alleged royalties owed to Pilling; alleged defamation; STK , STK manuals, or work performed on a VSM unit by Defendants; allegations that Defendants were asked to, or ever did, perform any illegal acts on CHE's behalf; and CHE's alleged breach of Defendants' contracts.

Federal Rule of Evidence 402 provides that irrelevant evidence is not admissible. Relevant evident is admissible, with certain exceptions that may be called for by the United States Constitution, a federal statute, the federal rules, or other rules prescribed by the Supreme Court.  Fed. R. Evid. 402.  Furthermore, under Federal Rule of Evidence 403, relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.

In support of its Motion in Limine, CHE argues that evidence or testimony relating to Defendants' Counterclaims is inadmissible under Rule 401 of the Federal Rules of Evidence, and states that the Court may properly exclude references to claims dismissed in Orders granting summary judgment.  Rule 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.  Fed. R. Evid. 401.  CHE claims that evidence relating to the dismissed Counterclaims is not relevant, is of no consequence in determining the outcome of this action, and would be highly prejudicial to CHE.  The Court agrees.

Excepting evidence relevant to the remaining breach-of-contract claim contained in Count II of Defendant Marcus Smith's Counterclaim, Defendants shall neither argue nor present any evidence in opening statement or at any other time throughout the proceedings that relates to

the dismissed Counterclaims, including, but not limited to, evidence of: alleged bonuses owed to Defendants Dowell and Laura Smith; alleged royalties owed to Pilling; alleged defamation; STK, STK manuals, or work performed on a VSM unit by Defendants; allegations that Defendants were asked to, or ever did, perform any illegal acts on CHE's behalf; and CHE's alleged breaches of Defendants' contracts. CHE's Motion will be granted.

### III.    DEFENDANTS' FIRST MOTION IN LIMINE [ECF NO. 371]

In their First Motion in Limine, Defendants move the Court to preclude any testimony of the content of the computer-based hard drives submitted to CHE by Defendants, contending that such testimony violates the Best Evidence Rule, because CHE has not produced the hard drives, a computer printout of the hard drives' contents, or any other representation of such data.

Defendants additionally argue that testimony regarding the content of the hard drives is hearsay, because it is being introduced to prove Defendants failed to return CHE intellectual property. Defendants assert that the data contained in the hard drives constitute "statements" offered to prove the truth of the matter asserted; that is, whether CHE's intellectual property was present and accessible on the hard drives, and whether the Groove repository was password-protected,

Defendants also argue that the Court must exclude any evidence offered by Plaintiff referencing any photographs found on Defendants' hard drives or any medical condition or disability claims of Marcus Smith, because such evidence is not relevant to any issue in this matter. They further assert that, even if such evidence was in any way relevant, it should nevertheless be excluded, because its probative value is substantially outweighed by its prejudicial effect. Defendants additionally contend that any testimony or other secondary evidence relating to any photographs discovered on the computers must be excluded, because

8

Plaintiff has not produced the photographs, so its admission would violate the Best Evidence Rule,

Finally, Defendants also claim that Plaintiff should not be allowed to refer to CHE program SAM (Site Account Manager) as a CHE copyrighted material, or allege any claim relating to SAM under 17 U.S.C.A. § 101 et seq., 410, 411(a), asserting that Plaintiff has not established that SAM is a copyrighted work that has been registered in accordance with Section 411(a).  They further contend that Plaintiff has not pleaded a copyright infringement claim relating to SAM, and thus must not produce evidence referring to SAM as a copyrighted work, or attempting to establish Defendants violated 17 §§101 et seq., 410, 411(a), as it relates to SAM.

Defendants' arguments to exclude any testimony regarding the content of the computer-based hard drives submitted to CHE by Defendants are without merit, and constitute a collateral attack on issues already determined by the Court in summary judgment dispositions.  The Court finds this evidence is relevant to the jury's determination of damages.  As discussed more fully below, CHE shall be presenting, on the issue of damages resulting from Defendants' breaches of their employment agreements with CHE, evidence of attorneys' fees CHE has incurred during the prosecution of this case.  The evidence shows that Defendants' conduct, which included, among other things, Mr. Pilling's use of a data-wiping program on a computer used during the course of his CHE employment, and numerous discovery disputes concerning the contents of the hard drives during the course of this litigation, has resulted in significant related costs and attorneys' fees.  Consequently, testimony regarding the content of the hard drives is relevant to the issue to be determined.  Accordingly, CHE shall be allowed to present evidence regarding the content of the computer-based hard drives submitted to CHE by Defendants.

In light of CHE's decision to proceed only on its breach-of-contract claims against Defendants, the Court finds that any evidence offered by Plaintiff referencing any medical condition or disability claims of Marcus Smith, is not relevant to any issue in this matter.  For the same reason, the Court finds that any reference to CHE program SAM (Site Account Manager) as a CHE copyrighted material also is not relevant to any issue in this matter.  Accordingly, CHE shall  neither argue nor present any evidence in opening statement or at any other time throughout the proceedings that relates to any medical condition or disability claims of Marcus Smith, or refers to CHE program SAM as CHE copyrighted material.  Defendants' Motion will be denied in part, and granted in part..

## IV.     DEFENDANTS' MOTION IN LIMINE REGARDING DAMAGES [ECF NO. 373]

Among other rights and remedies for violations, Defendants' Employment Agreements provides that CHE shall recover expenses, including attorneys' fees, incurred to enforce the agreements or to seek redress.  The Employment Agreements governing Jonathan Dowell's, Marcus Smith's, and Linda Smith's employment with CHE provide, in pertinent part:

> In addition to and not in lieu of any other rights and remedies which Employer may have for any violation of this Agreement, Employee agrees to pay Employer the sum of $10,000 per specific violation of Section 4 . . ..  In addition to and not in lieu of any other rights and remedies which CHE may have for any violation of this Agreement, if CHE incurs expenses to retain attorneys to enforce this Agreement and/or seek redress for any violation, Employee promises and agrees to pay all costs, court costs, fees and expenses, including actual attorneys' fees, incurred by CHE to enforce this Agreement and/or recover and collect damages for any violation, whether or not litigation is commenced.

[ECF Nos. 377-1 at 5, 377-4 at 5; 377-5 at 5].

William Pilling's Employment Confidentiality and Non-Competition Agreement with CHE states, as relevant:

> If CHE incurs expenses to retain attorneys to enforce this Agreement and/or seek redress for any violation, Employee promises and agrees to pay all costs, court

>costs, fees and expenses, including actual attorneys (sic) fees, incurred by CHE to enforce this Agreement and/or recover and collect damages for any violation, whether or not litigation is commenced.

[ECF Nos. 377-2 at 6; 377-3 at 6].

As stated in the Court's Order granting summary judgment, on the issue of liability, to CHE on the breach-of-contract claims CHE brought against Defendants, the record evidence, at the minimum, establishes that Defendants' breaches caused damages, in that CHE has incurred expenses to enforce terms of Defendants' employment agreements [ECF No. 354]. As well, the Court found that Defendants Dowell, Marcus Smith, and Laura Smith had breached Sections 4.7.3 and 4.8 of their Employment Agreements with CHE, specific violations for which the agreements arguably would have required these three defendants each to pay CHE the sum of $20,000.

In their Motion and Supplemental Brief [ECF No. 376] , Defendants argue that Plaintiff should be precluded from presenting any evidence of damages under Federal Rule of Civil Procedure 37(c)(1), because Plaintiff has failed to disclose any computation of damages, or any documents or other evidentiary materials related to damages as required by Rule 26 (a).

Rule 26(a)(1)(A)(iii) requires parties, without awaiting a discovery request, to provide to the other parties of an action, a computation of each category of damages claimed by the disclosing party. The disclosing party must also make available for inspection and copying any unprivileged or non-protected documents or other evidentiary material on which each computation is based, including materials bearing on the nature and extent of injuries suffered. Fed. R. Civ. P. 26(a)(1)(A)(iii). If a party fails to provide information as required by Rule 26(a), Rule 37(c) precludes that party from using the unprovided information to supply evidence at a trial, unless the failure was substantially justified or is harmless. Fed R. Civ. P. 37(c)(1).

In its Rule 26(a)(1) Initial Disclosures regarding computation of any damages claimed [ECF No. 376-1], CHE stated:

> Plaintiff is seeking fair and reasonable compensation for the violations which Defendants have committed, including but not limited to the damages CHE has suffered in having to redevelop the same or similar source codes and data programs which Defendants misappropriated, harm to CHE's data, programs and computer systems, lost profits of CHE as a result of Defendants' actions, disgorgement of TriPoint Development, Inc.'s profits and/or the unjust enrichment of Defendants Dowell, Smith and Pilling, disgorgement or recoupment of all salary paid to Johnthan (sic) Dowell, Marcus Smith and Linda Smith while breaching their fiduciary duty to CHE; actual and statutory damages pursuant to 17 U.S.C. § 504; monetary and compensatory damages in an amount to be determined at trial for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), punitive damages to be proven at trial; costs and attorneys' fees associated with the filing of its Complaint; and costs and attorneys' fees against counsel Kevin Dolley, individually and the Law Offices of Kevin Dolley, P.C., pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, for filing and prosecuting counterclaims and third party claims that have no factual or legal merit.

With the exception of one portion of a counterclaim brought by Defendant Marcus Smith, the claims filed on behalf of Defendants and third parties were either voluntarily dismissed and withdrawn, or dismissed by Court Order upon entry of summary judgment for CHE, dispositions that strongly indicate the lack of factual or legal merit in the counterclaims and third party claims Defendants filed and prosecuted against CHE [ECF Nos. 137, 169, 354].

CHE has indicated to the Court its intention to present to the jury, as evidence of its damages, only the attorneys' fees it has incurred to enforce the terms of its employment agreements with Defendants.  Defendants' pleadings in support of their motion to exclude CHE's damages evidences do not address CHE's argument that its attorneys' fees and expenses are a component of its actual damages flowing from Defendants' breach of contract, or CHE's contention that the rules governing disclosure do not require it to submit an accounting of its fees. *See Weitz Co. v. MH Washington*, 631 F.3d 510, 529-30 (8th Cir. 2011); *Symetra Life Ins. Co.*, 2012 WL 5880799 at *12 (S.D. Texas Nov. 21, 2012).  *See alsoPride Hyundai, Inc. v. Chrysler*

*Fin. Co., LLC*, 355 F. Supp.2d 600, 602-03 (D. Rhode Island 2005) (damages sought under the terms of a contract typically are to be claimed in a pleading and may involve issues to be resolved by a jury).  Instead, Defendants continue to advance their contention that CHE should be precluded from presenting any evidence of damages because, under Rule 26(a)(a)(A)(iii), CHE was required to provide a damages computation with supporting evidence in its initial disclosures and discovery responses, but failed to do so.  Defendants further contend that CHE's failure to do so was not harmless or substantially justified.  Defendants assert: "Plaintiff's failure to provide a computation of damages violated Federal Rule of Civil Procedure 26(a) and has left Defendants, on the eve of trial, with little idea as to the nature and amount of Plaintiff's damages claims, and has precluded Defendants from preparing a damages defense at trial."  The Court finds Defendants' argument regarding unfair surprise unpersuasive, as the record not only conclusively shows that the issue of attorneys' fees and costs as an element of breach-of-contract damages was contemplated by, expressly contracted for, and agreed to, in the parties' Employment Agreement; but also clearly establishes that the issue of attorney's fees as damages has been a primary focus of the parties during the course of this contentious litigation.

  The factors to be considered in determining whether a failure to disclose information is substantially justified or harmless include the importance of the evidence, the prejudice to the opposing party of including the evidence, the possibility of curing such prejudice by granting a continuance, and the explanation for the party's failure to disclose.  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008);  *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 683 (8th Cir. 1995); *Citizens Bank of Batesville, Ark. v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994).  These factors demonstrate that CHE's failure to make an earlier disclosure of the affidavits and invoices is harmless.  The evidence of attorneys' fees are crucial evidence of the damages resulting from

13

Defendants' breaches in this matter, and excluding this evidence as a sanction under Rule 26 would critically impair CHE's ability to prosecute it claim.  In terms of explaining its failure to provide calculations of its attorneys' fees in the course of its Rule 26 disclosures, CHE contends that the rule does not require that attorneys' fees be calculated or produced, and that attorneys' fees are subject to attorney client privilege and the work product doctrine.  The Court agrees with CHE's contention that supplying invoices in initial disclosure would impair its ability to litigate the matter and cause CHE prejudice, as to do so would provide Defendants information concerning CHE's trial strategy, including contact and correspondence with witnesses or parties, As a logical matter, the Court notes that Defendants should not be surprised or prejudiced as to the hours and resources expended by counsel for CHE in the course of this litigation, as Defendants' counsel  presumably expended a like amount of time prosecuting the matter on their behalf.  Furthermore, Defendants will not be prejudiced by the admission of this evidence. Defendants have been aware since the outset of this litigation that CHE would be seeking an award of reasonable and necessary attorneys' fees and costs of court related to Defendants' breaches of their employment agreements, as provided by the agreements' terms.  The focus of the prejudice inquiry is whether CHE's alleged failure to comply with Rule 26 prejudiced Defendants' ability to prepare for trial, not whether Defendant will be prejudiced by use of the evidence of attorneys' fees at trial.  During the telephone conference, Defendants asserted that their ability to prepare for trial was so critically impaired, contending that they were "basically blind" as to the amount of damages CHE will claim.[3]  When the Court indicated its inclination to vacate and reschedule the present trial setting, to permit time for CHE to provide evidence of fees and for Defendants to prepare their defense thereto, CHE stated that it was willing to provide

---

[3]The Court notes that whether CHE has provided a computation of its attorneys' fees is a matter of dispute among the parties, and appears to be a matter related to settlement discussions.

14

invoices to Defendants immediately, and would not object to a continuance. However, Defendants objected to any postponement of trial, claiming a delay would inconvenience them, and insisting that exclusion of evidence of attorneys' fees is mandatory under Rule 37.

Accordingly, CHE shall immediately provide to Defendants a computation of the amount of attorneys' fees that it is seeking as damages in this matter, and shall produce to Defendants the invoices, regarding the legal services performed and the fees charged for such services. CHE shall be allowed to produce evidence at trial as pertinent to support a jury finding of nominal damages, and, as well, evidence regarding the legal services performed by its counsel and the fees charged therefore, and all evidence tending to show the need to provide legal services in prosecution of CHE's claims and defenses to Defendants' counterclaims and third party claims.

In their Second Motion in Limine, Defendants also claim that any evidence relating to statements made or documents prepared in pursuit of a settlement agreement must be excluded as provided in Federal Rule Evidence 408. CHE shall neither argue nor present any evidence in opening statement or at any other time throughout the proceedings that relates to settlement discussions.

Defendants' Second Motion in Limine will be denied in part, and granted in part.

Accordingly,

**IT IS HEREBY ORDERED** that CHE's Motion in Limine to Exclude Testimony and Expert Report of William Pilling ("CHE's *Daubert* Motion") [ECF NO. 361] is **GRANTED**.

**IT IS FURTHER ORDERED** that CHE's Motion to Exclude Testimony or Evidence Related to Defendants/Counterclaim Plaintiffs' Counterclaims [ECF No. 365] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' First Motion in Limine [ECF No. 371] is and **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that Defendants' Second Motion in Limine [ECF No. 373] is **GRANTED in part**, and **DENIED in part.**

Dated this  6th  day of February, 2013.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE